**Angela DeMOSS, Plaintiff,**

v.

**CITY MARKET, INC., a Colorado corporation, Every Life, Inc., a California corporation, Showa Denko K.K., a Japanese corporation, Showa Denko America, a New York corporation, and John Does 1 through 10, Defendants.**

**Civ. No. 90–C–461W.**

United States District Court,
D. Utah, C.D.

March 21, 1991.

W. Cullen Battle, John D. Ray, Michael L. Chidester, Douglas B. Cannon, Salt Lake City, Utah, for plaintiff.

Scott W. Christensen, Salt Lake City, Utah, for defendant City Market, Inc.

Tracy H. Fowler, William H. Christensen, John M. Bredehoft, Salt Lake City, Utah, for defendant Showa Denko K.K.

### MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on defendant Showa Denko K.K.'s motion to dismiss plaintiff's Amended Complaint for lack of personal jurisdiction and for insufficient service of process. A hearing on the motion was held March 15, 1991. Showa Denko K.K. was represented by Tracy H. Fowler, William H. Christensen and John M. Bredehoft. Defendant City Market, Inc. was represented by Scott W. Christensen. Plaintiff was represented by Douglas B. Cannon. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties in relation to the motion. Since taking the matter under advisement, the court has

further considered the law and facts relating to this motion. Now being fully advised, the court renders the following memorandum decision and order.

## BACKGROUND

Showa Denko K.K. ("SDK") is a Japanese corporation headquartered in Tokyo, Japan. Since 1982, SDK, as a regular part of its business, synthesized and sold L-tryptophan, an amino acid, for human consumption. Plaintiff's complaint alleges that in 1989 she purchased and ingested in Utah contaminated L-tryptophan manufactured by SDK. As a result of that L-tryptophan ingestion, plaintiff alleges she developed an extremely painful and debilitating blood disorder known as eosinophilia-myalgia syndrome ("EMS").

Plaintiff alleges that defendants Showa Denko America, Inc. ("SDA"), a wholly owned subsidiary of SDK; City Market, Inc., and Every Life, Inc., were involved in the chain of distribution, marketing and sale of some or all of the L-tryptophan ingested by plaintiff. Neither City Market nor Every Life directly purchased L-tryptophan from SDA or SDK.

SDK has no offices, bank accounts, debts, real property or leases in the United States. SDK did not market or advertise L-tryptophan for sale in Utah nor did it place advertisements for L-tryptophan in any national publication. SDK's only direct contacts with Utah occurred in 1988 and 1989 when SDK employees visited the state on four separate occasions for business purposes unrelated to L-tryptophan.

SDK owns a direct or indirect interest in three United States corporations: Showa Denko Carbon, Inc., a Delaware corporation; Showa Aluminum Corporation of America, an Ohio corporation; and SDA, a New York corporation. SDA's principal place of business is in New York and it maintains offices in California and Illinois. SDK has one seat on SDA's three-member Board of Directors. The meetings of the SDA Board of Directors are held in New York and the minutes of those meetings are kept in English. SDA has 14 employees and about $100,000 in fixed assets, composed primarily of office fixtures and a one-room apartment.

SDA served as SDK's exclusive United States distributor of L-tryptophan. In 1989, SDK supplied approximately 50 to 60 percent of the L-tryptophan consumed in the United States, which represented 68 percent of SDK's worldwide L-tryptophan sales. SDK's worldwide sale of L-tryptophan constituted approximately $7 million of $3.62 billion in total sales, or approximately .2 percent of SDK's total sales.

SDK sold the L-tryptophan to SDA in 50-kilogram fiber drums, which SDA in turn sold to distributors and formulators who processed the material into capsules and tablets for wholesale distribution. SDA's shipments of L-tryptophan in 1989 were made to customer locations in New Jersey, New York, Michigan, South Carolina, California, Connecticut, Florida, Illinois and Oregon. In 1987, SDA sold a single 50-kilogram bulk shipment of L-tryptophan to a company located in Ogden, Utah. SDA has made no other sales of bulk L-tryptophan to any other customer in Utah.

SDK was not involved in the distribution or processing of L-tryptophan after deliveries of the product were accepted by SDA. SDK did work with SDA, however, in the marketing and developing of SDK products, including L-tryptophan, destined for distribution in the United States. In addition, SDK personnel made occasional visits to the United States to meet with SDA's L-tryptophan customers.

On November 13, 1989, after learning of a possible link between EMS and L-tryptophan consumption, SDK requested that SDA immediately cease further sales of L-tryptophan. SDA last shipped L-tryptophan on November 9, 1989, and, on November 20, 1989, SDA recalled unprocessed bulk L-tryptophan from its customers.

## STANDARD OF REVIEW

Plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Taylor v. Phelan,* 912 F.2d 429, 431 (10th Cir.1990) (quoting *Behagen v.*

*Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985)). Prior to trial, when a motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other written materials, plaintiff need only make a prima facie showing of jurisdiction. *Id.* at 431. In assessing whether this standard has been met, allegations in the complaint that are uncontroverted by defendant's affidavits must be taken as true and all factual disputes are resolved in plaintiff's favor. *Id.*

### DISCUSSION

#### A. *Service of Process*

During oral argument on this motion, counsel for plaintiff and defendant informed the court that plaintiff intended to effect proper service of process upon defendant pursuant to Article 5 of the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, T.I.A.S. 6638, *reprinted in* 28 U.S.C.A. following Fed.R.Civ.P. 4. ("Hague Service Convention"). Accordingly, the court need not and does not address the issue whether plaintiff's attempted service of process by registered mail violated the Hague Service Convention. Because the affidavit of Takahisa Sugano was submitted solely in support of defendant's insufficiency of service argument, plaintiff's motion to strike the affidavit of Mr. Sugano is moot and the court does not reach it.

#### B. *Personal Jurisdiction*

■ Whether this court may exercise personal jurisdiction over a nonresident defendant in a diversity action is determined by the law of the forum state and the requirements of the due process clause of the fourteenth amendment to the United States Constitution. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir.1990). This determination involves a two-step analysis. First, the court must determine whether a state statutory basis exists to assert jurisdiction over the defendant. Second, if jurisdiction is proper under the statute, the

court must determine whether exercising such jurisdiction comports with the requirements of due process. *See Taylor*, 912 F.2d at 431; *Lister v. Marangoni Meccanica S.P.A.*, 728 F.Supp. 1524, 1525 (D.Utah 1990).

#### 1. The Utah Long–Arm Statute

■ The state statutory basis for asserting jurisdiction over defendant SDK is found in the Utah long-arm statute, which provides:

> Any person ... whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:
>
> .    .    .    .    .
>
> (3) the causing of any injury within this state whether tortious or by breach of warranty.

Utah Code Ann. § 78–27–24 (1987). The Utah Legislature expressly commanded that the provisions of the Utah long-arm statute be applied "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment." *Id.* § 78–27–22 (1987).

Plaintiff's Amended Complaint alleges she purchased in Utah contaminated L-tryptophan produced by defendant, and, as a result of her consumption of that L-tryptophan, she suffered serious injury within this state. Amended Complaint ¶¶ 13, 14, 18, 19. The complaint alleges defendant is liable for plaintiff's injury under theories of strict liability, *id.* ¶¶ 22, 23, 27–29, negligence, *id.* ¶¶ 30, 31, 35–36, and breach of the implied warranties of merchantability and fitness for specific use, *id.* ¶¶ 37–40.

Defendant denies it manufactured or distributed the L-tryptophan that allegedly caused plaintiff injury. Defendant contends that "other than furnishing bulk L-tryptophan, SDK had no active role in bringing the product to Utah." Defendant's Mem. in Supp. of Motion to Dismiss at 10. Resolving this factual dispute in

plaintiff's favor, as the court must, it is clear the allegations in the complaint are sufficient to create a prima facie showing of jurisdiction over the defendant under Utah Code § 78–27–24(3).

Thus, the first prong of personal jurisdiction test is satisfied. The sole remaining inquiry is whether asserting jurisdiction over the defendant comports with due process.

## 2. Due Process

An exercise of personal jurisdiction comports with due process only if the defendant has certain minimum contacts with the forum state such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)); *see Asahi Metal Indus. v. Superior Court*, 480 U.S. 102, 105, 107 S.Ct. 1026, 1028, 94 L.Ed.2d 92 (1987). The due process test, as formulated by *International Shoe* and its progeny, requires the court to consider first, whether the defendant has the requisite minimum contacts with Utah, and, second, whether asserting jurisdiction based on such contacts is fair and reasonable.

### a. *Minimum Contacts*

The United States Supreme Court has stated that minimum contacts, for personal jurisdiction purposes, must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and privileges of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). When a corporation engages in such purposeful availment in the forum state "it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the state." *World–Wide Volkswagen Corp. v. Wood-son*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

The case at hand involves a defendant manufacturer that placed a product into the national stream of commerce through a wholly owned subsidiary acting as the manufacturer's exclusive distributor. Analysis of whether SDK has the requisite minimum contacts with Utah therefore is guided by the stream of commerce theory of personal jurisdiction. The Supreme Court first examined the stream of commerce theory in *World–Wide Volkswagen*, where it held that a consumer's unilateral act of bringing a defendant's product into the forum state was insufficient to establish minimum contacts under the due process clause. *World–Wide Volkswagen*, 444 U.S. at 299, 100 S.Ct. at 568.

The defendants in *World–Wide Volkswagen* were the retailer and regional distributor of an automobile purchased in New York and driven to Oklahoma, where an accident occurred. The plaintiff had argued that because the retailer and regional distributor sold a product that was mobile by design and purpose, they could foresee being haled into the courts of states into which their customers might drive. The Supreme Court rejected the idea that "'foreseeability' alone [is] a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566. Recognizing, however, that foreseeability is not wholly irrelevant to personal jurisdiction, the Court concluded that a "forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce *with the expectation that they will be purchased by consumers in the forum State.*" *Id.* at 297–28, 100 S.Ct. at 567 (citation omitted; emphasis added).

In *Asahi Metal Industry v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Supreme Court revisited the stream of commerce theory but unfortunately failed to reconcile divergent lower court interpretations of the theory

that emerged in the wake of *World–Wide Volkswagen.* In *Asahi,* the Court considered whether a California court could exercise jurisdiction over a Japanese component-part manufacturer whose only contact with the forum was that some of its parts were incorporated into other products made overseas and sold in California.

Eight justices in *Asahi* agreed that, regardless whether minimum contacts existed, the California court's assertion of jurisdiction over the Japanese defendant would be unreasonable and unfair, and thus violated the due process clause. The justices split sharply, however, on the proper interpretation and application of the stream of commerce theory. Justice O'Connor, joined by Chief Justice Rehnquist and Justices Powell and Scalia, wrote:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.

*Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032.

Justice Brennan, in an opinion joined by Justices White, Marshall and Blackmun, rejected Justice O'Connor's view that a stream-of-commerce defendant must engage in "additional conduct" toward the forum state for the exercise of jurisdiction to be consistent with due process. Justice Brennan stated:

> The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacturer to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.

*Id.* at 117, 107 S.Ct. at 1034 (Brennan, J., concurring in part and in the judgment).

Because the *Asahi* Court split so sharply on the proper interpretation of the stream of commerce theory, this court believes the correct minimum contacts standard to apply in this case is the standard articulated by a majority of the Court in *World–Wide Volkswagen* and previously applied by the Tenth Circuit Court of Appeals.[1] *See Irving v. Owens–Corning Fiberglas Corp.,* 864 F.2d 383, 386 (5th Cir.) (noting splintered opinion in *Asahi* and applying *World–Wide Volkswagen* stream of commerce standard), *cert. denied,* —— U.S. ——, 110 S.Ct. 83, 107 L.Ed.2d 49 (1989); *Mason v. F. Lli Luigi & Franco Dal Maschio Fu G.B.,* 832 F.2d 383, 386 (7th Cir. 1987) (applying *World–Wide Volkswagen* standard and finding jurisdiction over Italian manufacturer).[2]

**1.** In *Fidelity and Casualty Co. of New York v. Philadelphia Resins,* 766 F.2d 440 (10th Cir. 1985), the Tenth Circuit applied the *World–Wide Volkswagen* Court's articulation of the stream of commerce theory to hold that a foreign manufacturer's contacts with the state of Utah were insufficient to support personal jurisdiction. *See Philadelphia Resins,* 766 F.2d at 446 ("Placing one's product into the 'stream of commerce' with the expectation of distribution into particular areas is the classic example" of a deliberate, though indirect, effort to serve the forum state's market.)

**2.** The court respectfully rejects defendant's suggestion that the Utah Supreme Court decision in *Parry v. Ernst Home Center Corp.,* 779 P.2d 659 (Utah 1989), which relied heavily on Justice O'Connor's stream of commerce view, is controlling here. After assuming applicability of the Utah long-arm statute, the *Parry* court held that two Japanese corporate defendants, a manufacturer and exporter, lacked the minimum contacts necessary for jurisdiction under the federal due process clause. However, Utah state court interpretations of due process are not controlling in the federal courts. *American Land Programs, Inc. v. Boneventua Uitgevers Maatschappij, N.V.,* 710 F.2d 1449, 1452 (10th Cir.1983). Furthermore, *Parry's* extensive reliance on Justice O'Connor's plurality opinion is suspect and has been criticized. *See* Note, *Parry v. Ernst Home Center Corporation: The 'Mauling' of Personal Jurisdiction Theory,* 1990 Utah L.Rev. 479, 500 (by incorrectly adopting the O'Connor plurality, the *Parry* court narrowed the reach of the Utah long-arm statute in contravention of the express legislative directive that jurisdiction be asserted over nonresident defen-

Under the *World–Wide Volkswagen* formulation, personal jurisdiction is proper if a corporation delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state. *See World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297–98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Defendant's act of serving the forum state market by placing its product in the stream of commerce must be purposeful, but it need not be direct; an indirect effort is sufficient. *See id.* at 297, 100 S.Ct. at 567 (effort of defendant "to serve, directly or indirectly, the market" is sufficient to subject nonresident defendant to jurisdiction); *Fidelity & Casualty Co. v. Philadelphia Resins Corp.*, 766 F.2d 440, 446 (10th Cir.1985) ("If a defendant's product comes into the forum state as a result of a deliberate, though perhaps indirect, effort of the defendant to serve the forum state's market, then the defendant is subject to jurisdiction there.").

As a manufacturer, SDK was at the head of the L-tryptophan commerce stream. From this upstream position, SDK could control where, when and to whom it sold L-tryptophan. SDK purposefully chose to enter the United States market indirectly through an exclusive distributorship arrangement with SDA, its wholly owned subsidiary. SDA distributed L-tryptophan nationwide through 23 major distributors/processors located in nine geographically diverse states. SDK acknowledges it supplied 50 to 60 percent of the L-tryptophan consumed in the United States, and that these sales constituted 68 percent of its world-wide L-tryptophan sales.

■ Given these facts, the court concludes that SDA's distribution of L-tryptophan throughout the United States, including Utah, coupled with the large volume and lengthy duration of that distribution, constitutes a significant contact with the forum that may be attributed to SDK. *Cf. Warren v. Honda Motor Co.*, 669 F.Supp. 365, 370 (D.Utah 1987) (parent corporation's acts of placing product in worldwide market can be attributed to its subsidiary

dants to the full extent permitted by the due

and constitute a minimum contact). This conclusion is supported by the insular nature of the SDK–SDA parent-subsidiary relationship, the volume and duration of SDK's L-tryptophan sales to SDA, the fact SDK worked with SDA in marketing and developing SDK products and the fact SDK personnel occasionally visited the United States to meet with SDA's L-tryptophan customers.

In sum, the court finds that SDK exported massive quantities of L-tryptophan to the United States with the clear expectation that the product would be consumed throughout the nation, including Utah. In doing so, SDK derived substantial economic benefit from the retail sale of the final product in Utah, and indirectly benefitted from the state's laws that regulate and facilitate commercial activity. *See Asahi Metal Indus. v. Superior Court*, 480 U.S. 102, 117, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (Brennan, J., concurring in part and concurring in the judgment). Given SDK's awareness that its product would in all likelihood be consumed in Utah, the possibility of being haled into court there should not come as a surprise. Accordingly, the court finds that SDK has sufficient minimum contacts with this forum to support an assertion of personal jurisdiction.

### b. *Reasonableness*

■ The second prong of the due process analysis essentially asks whether the exercise of jurisdiction over the defendant would be fair and reasonable. The Supreme Court has noted that "considerations of [fair play and substantial justice] sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Relevant factors in determining the reasonableness or fairness of asserting jurisdiction include: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining

process clause).

the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi*, 480 U.S. at 113, 107 S.Ct. at 1033; *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184; *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564.

■ In this case, defendant resides in Utah and many of the witnesses and much of the evidence is located here. The plaintiff's burden in pursuing this action in Japan, or another state, significantly outweighs any burden placed on SDK, a multibillion dollar corporation with global reach. In addition, SDK already is defending numerous L-tryptophan lawsuits in the United States. Defending an additional lawsuit in Utah should not pose an onerous burden. The state of Utah has a considerable interest in protecting its citizens from injury caused by harmful food or dietary products marketed and distributed within the state. Utah also has a strong interest in protecting its citizens from defending claims worldwide and being subjected to the possibly conflicting standards of other nation's legal systems.

Utah provides the most efficient and effective forum for providing plaintiff a full resolution of her claims while vindicating the state's interests. If SDK was dismissed from this suit, plaintiff would be compelled to bring two lawsuits or face the prospect of incomplete recovery in a single forum.[3] Finally, the court finds that state of Utah's interest in protecting its citizens from injury and in providing an efficient judicial resolution of this dispute outweighs any possible encroachment on Japan's sovereign interests in this case. While "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," *United States v. First Nat'l City Bank*, 379 U.S. 378, 404, 85 S.Ct. 528, 542, 13 L.Ed.2d 365 (1965) (Harlan, J., dissent-

ing), forcing SDK to litigate in this forum simply is not unduly burdensome or unfair, while the interests of plaintiff and the forum state are substantial.

In sum, the court holds that the exercise of personal jurisdiction over SDK does not offend "traditional notions of fair play and substantial justice."

## CONCLUSION

Plaintiff has made a prima facie showing that SDK is subject to jurisdiction under Utah Code. Ann. § 78–27–24(3). Exercising such jurisdiction is consistent with the due process clause because SDK possesses the requisite minimum contacts with Utah and the assertion of jurisdiction is fair and reasonable.

Accordingly, and good cause appearing, IT IS HEREBY ORDERED that

1. Defendant SDK's motion to dismiss for lack of personal jurisdiction is denied.

2. This order shall suffice as the court's ruling on this motion and no further order need be prepared by counsel.

---

3. Utah's interest in providing a single forum in which the plaintiff can seek all the relief to which [she] is entitled is expressly contemplated in the ... [state] comparative negligence law, abolishing joint and several liability and rights of contribution among defendants. Utah Code Ann. §§ 78–27–38, –40.

Under the ... Utah statute, unless all defendants are in the same forum, the plaintiff may not be able to get a compete recovery in one action.
*Warren v. Honda Motor Co., Ltd.*, 669 F.Supp. 365, 371 n. 6 (D.Utah 1987).