**HARNISCHFEGER ENGINEERS, INC., Plaintiff,**

v.

**UNIFLO CONVEYOR, INC., Defendant.**

No. 94–C–1150W.

United States District Court,
D. Utah,
Central Division.

April 25, 1995.

Joseph E. Tesch, Tesch, Thompson & Sonnenreich, L.L.C., Park City, UT, for plaintiff.

David M. Wahlquist, Kirton & McConkie, Salt Lake City, UT, for defendant.

## MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS

WINDER, Chief Judge.

### I. INTRODUCTION

This matter is before the court on defendant Uniflo Conveyor, Inc.'s ("Uniflo") motion to dismiss plaintiff Harnischfeger Engineers, Inc.'s ("HEI") complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. The court held a hearing on Uniflo's motion on April 14, 1995 at 8:00 a.m. At the hearing, Joseph E. Tesch and Robert A. Lonergan represented plaintiff HEI, while Charles E. Millsap and David M. Wahlquist represented defendant Uniflo.

Before the hearing, the court considered carefully the memoranda and other materials submitted by each of the parties relating to Uniflo's motion. The court had also read certain of the authorities cited by each of the parties. Following oral argument, and after taking Uniflo's motion under advisement, the court has further considered the law and facts related to the motion. Having now fully considered the issues in this case, and good cause appearing, the court enters the following Memorandum Decision and Order.

## II. BACKGROUND [1]

Plaintiff HEI is a Delaware corporation with its principal place of business in Brookfield, Wisconsin and with offices located in West Valley City, Utah.[2] HEI is in the business of designing and constructing complex integrated material handling systems. On March 20, 1992, HEI entered into a contract with the United States Postal Service ("USPS") to design and construct certain portions of the new USPS Van Nuys General Mail Facility ("Post Office") in Santa Clarita, California. One of the things that HEI was hired to design and construct at the Post Office was a mail tray conveyor system.

Defendant Uniflo is a Kansas corporation with its principal place of business in Wichita, Kansas. Uniflo is in the business of designing and constructing conveyor systems. On June 3, 1992, HEI hired Uniflo as a subcontractor to help design and construct the mail tray conveyor system for the Post Office. Under the terms of the subcontract, Uniflo was to complete its work at the Post Office by June 25, 1993.

On January 17, 1994, the Santa Clarita area was hit by an earthquake. Because of the earthquake, much of the construction that had already been completed at the Post Office site—including construction on the mail tray conveyor system—needed to be repaired. Accordingly, on February 1, 1994, HEI contacted Uniflo by letter and asked it to estimate the damage to the mail tray conveyor system and the delays that would result in completing the system as a result of the earthquake.

On February 10 and February 14, 1994, Uniflo sent HEI two letters which divided Uniflo's assessment of the damage into three categories, and which stated that repairs under two of the categories were beyond Uniflo's contractual responsibilities and would require additional consideration from HEI before being undertaken.

On February 17, 1994, HEI sent a response letter to Uniflo's February 10 and February 14, 1994 letters. In that letter,

HEI informed Uniflo that it was contractually required to repair all of the damage to the mail tray conveyor system caused by the earthquake, and that HEI would pursue appropriate relief from the USPS if Uniflo did not fix the damage.

Soon thereafter, upon inspecting the Post Office site for earthquake damage, HEI discovered that Uniflo's design and construction of the floor anchors for the mail tray conveyor system were inadequate. Accordingly, by letter dated February 22, 1994, HEI served on Uniflo a formal "Notice to Cure" as was required by the terms of its general contract with the USPS. HEI's Notice to Cure asked Uniflo to re-install the floor anchors in conformity with the specifications called for in Uniflo's subcontract with HEI.

Uniflo responded to HEI's Notice to Cure by letter dated March 2, 1994. In that letter, Uniflo again told HEI that it needed "additional compensation from HEI" prior to either repairing the damage caused by the earthquake or re-installing the floor anchors for the mail tray conveyor system. Six days later, on March 8, 1994, HEI terminated Uniflo's subcontract. Subsequently, HEI undertook to complete the design and installation of the mail tray conveyor system for Uniflo. The engineering, project analysis, and project management portions of the completion work were done at HEI's West Valley City, Utah offices, and the total cost of the work is alleged by HEI to have been $830,-000.

Subsequently, on September 1, 1994, Uniflo sent a letter to Mr. Ramon Rego, a postal service employee located in Tennessee, seeking the USPS's help in getting HEI to pay for spare parts that Uniflo delivered to the Post Office site several months earlier. Paragraph two of the letter to Mr. Rego stated:

> Uniflo is extremely concerned that we will not receive payment for the legitimate supply of the $108,000 in spare parts we supplied to the Van Nuys jobsite. We are further concerned that the USPS is about

---

1. The following background facts are taken from HEI's complaint. They are thus phrased in a light most favorable to HEI.

2. HEI refers to its West Valley City, Utah office as "HEI West."

to release a sizeable sum of retention to [HEI] that will never find its way to Uniflo. *[HEI] illegally and unjustifiably terminated Uniflo's contract, and we will prove this fact in a court of law. Our real concern, however, lies in the fact that even with a favorable decision from the courts, [HEI's] financial condition will leave us with an "empty well."*

Letter from Joseph P. Forte, President of Uniflo, to Ramon Rego, R.A., Manager of Design and Construction for the United States Postal Service, at 1 (Sept. 1, 1994) (emphasis added).

Finally, on November 28, 1994, HEI commenced the present action by filing its five-count complaint against Uniflo with this court. The first three claims in HEI's complaint are all breach of contract claims which arise out of Uniflo's subcontract to construct and install the mail tray conveyor system for the Post Office. *See* Complaint at ¶¶ 26–37. The fourth claim in HEI's complaint is a defamation claim which arises out of Uniflo's September 1, 1994 letter to Mr. Rego. *Id.* at ¶¶ 38–40. The fifth claim in HEI's complaint is a tortious interference with contract claim which also arises out of Uniflo's September 1, 1994 letter to Mr. Rego. *Id.* at ¶¶ 41–43.

### III. STANDARD OF REVIEW

HEI, as the plaintiff in this case, bears the ultimate burden of establishing by a preponderance of the evidence that personal jurisdiction exists over Uniflo. *Doe v. National Medical Servs.*, 974 F.2d 143, 145 (10th Cir. 1992); *DeMoss v. City Market, Inc.*, 762 F.Supp. 913, 915–16 (D.Utah 1991) (citing *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir.1990), *cert. denied*, 498 U.S. 1068, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991)). At this early stage of the litigation, however, HEI needs only to make a prima facie showing of jurisdiction. *Doe*, 974 F.2d at 145.

This court must follow two rules in assessing whether HEI can make a prima facie showing of jurisdiction over Uniflo. First, all uncontroverted allegations contained in HEI's complaint must be taken as true. *DeMoss*, 762 F.Supp. at 916 (citing *Taylor*, 912 F.2d at 431). Second, all factual disputes between HEI and Uniflo must be resolved by

reading the facts in a light most favorable to HEI. *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985).

### IV. DISCUSSION

"Personal jurisdiction means 'the power to subject a particular defendant to the decisions of the court.'" *Rocky Mountain Claim Staking v. Frandsen*, 884 P.2d 1299, 1301 (Utah Ct.App.1994) (quoting *Stone's Farm Supply, Inc. v. Deacon*, 805 P.2d 1109, 1113 (Colo.1991)). Personal jurisdiction can be broken down into either "general" or "specific" jurisdiction, and whether a court can assert either type of jurisdiction depends upon the subject matter of the claim asserted and the number and quality of "contacts" the non-resident defendant has with the forum. *See STV Int'l Mktg. v. Cannondale Corp.*, 750 F.Supp. 1070, 1073 (D.Utah 1990) (citations omitted); *Abbot G.M. Diesel, Inc. v. Piper Aircraft Corp.*, 578 P.2d 850, 853 n. 6 (Utah 1978) (citation omitted). As explained by the Utah Supreme Court:

> General personal jurisdiction permits a court to exercise power over a defendant without regard to the subject of the claim asserted. For such jurisdiction to exist, the defendant must be conducting substantial and continuous local activity in the forum state. In contrast, specific personal jurisdiction gives a court power over a defendant only with respect to claims arising out of the particular activities of the defendant in the forum state. For such jurisdiction to exist, the defendant must have certain minimum local contacts.

*Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992) (citations omitted).

In this case, HEI asserts that the court has both general and specific jurisdiction over Uniflo. The court will thus address each of HEI's assertions seriatim.

### A. General Jurisdiction.

■ If a non-resident defendant's contacts with the forum are strong enough, a court may assert jurisdiction over that defendant

on any matter, whether or not the matter arises out of the defendant's contacts with the forum. *See Doe v. National Medical Servs.,* 974 F.2d 143, 146 (10th Cir.1992) (citing *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 446, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952)). Such a concept is known as "general" jurisdiction, and the issue to be decided is whether the defendant has had "continuous and systematic general business contacts" with the forum such that the defendant could reasonably anticipate being haled into the forum's courts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

In this case, HEI points to the following Uniflo contacts with Utah in arguing that the court can assert general jurisdiction over Uniflo: (1) Uniflo advertises its products in national publications and some of those publications make their way into Utah; (2) in 1992, Uniflo contacted several Utah companies for the purpose of soliciting new business;[3] and (3) as a result of that solicitation, Uniflo sold goods to Utah companies that totaled $11,161.40 in 1993 and $27,661.93 in 1994.[4]

In the court's opinion, these contacts fall far short of the contacts required to assert general jurisdiction over Uniflo. First, it is undisputed that Uniflo is not registered or authorized to do business in Utah and has no offices in Utah. Moreover, it is also undisputed that Uniflo has no employees or property or bank accounts in Utah. Yet it is only through pervasive general business contacts like these that a court can find the type of "substantial and continuous local activity" required to assert general personal jurisdiction over a defendant. *See Doe,* 974 F.2d at 146

(refusing to find general personal jurisdiction because the defendant had no property or agents in Colorado and solicited no business there); *Brown v. United States,* No. 92–C–788, 1993 WL 643364, at *7 (D.Utah No. 5, 1993) (refusing to find general personal jurisdiction because the defendant was not incorporated or licensed to do business in Utah and conducted no business in Utah). Second, while it is undisputed that Uniflo solicited business in Utah and sold approximately $39,000 in goods to Utah companies in 1993 and 1994, the fact of the matter is that those sales were all made to independent contractors and were extremely small in amount when compared with Uniflo's overall sales volume for 1993 and 1994.[5] Therefore, these contacts are also not contacts sufficient to support a finding of general jurisdiction over Uniflo. *See Frontier Fed. Sav. and Loan Assoc. v. National Hotel Corp.,* 675 F.Supp. 1293, 1296 n. 3 (D.Utah 1987) ("Although the decisions authorizing personal jurisdiction over nonresident defendants 'doing business' in Utah are sparse, ... Utah appears to require solicitation of business within the state *plus some other factor such as maintaining a warehouse or making deliveries.*") (emphasis added); *Cannondale,* 750 F.Supp. at 1073. Accordingly, for both of these reasons, the court finds that it lacks general personal jurisdiction over Uniflo in this case.

## B. Specific Jurisdiction.

■ HEI's case against Uniflo is before this court based on diversity of citizenship. As such, whether the court can assert specific personal jurisdiction over Uniflo is determined by Utah law. *See Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.,* 17 F.3d 1302, 1304 (10th Cir.1994); Fed.R.Civ.P. 4(e). Under Utah law, a three-part inquiry is used to determine whether specific jurisdiction exists: (1) the defendant's acts or contacts must implicate Utah under the Utah

---

**3.** For example, HEI claims that in 1992 Uniflo solicited business from it, Eaton–Kenway Company, and Wheeler Machinery Company.

**4.** HEI also points to Uniflo's Utah contacts regarding its work on the Post Office project in arguing that the court has general jurisdiction over Uniflo. Those contacts are discussed more

fully in the court's discussion on specific jurisdiction below.

**5.** Uniflo's total Utah sales in 1993 and 1994 amounted to less than 1/10 of one percent of its total sales volume for those years.

long-arm statute; (2) a "nexus" must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process. *See Cannondale*, 750 F.Supp. at 1074; *see also Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir.1995) (outlining the above three requirements as the test for specific jurisdiction under Utah law); *Brown*, 1993 WL 643364, at *7 (citing *Cannondale* ). The court will address each of these requirements below.

*(1). The Utah Long–Arm Statute.*

The first issue the court must address is whether one of the specifically enumerated statutory acts under the Utah long-arm statute has been met. The relevant portion of the Utah long-arm statute provides:

> Any person ... whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:
>
> (1) the transaction of any business within this state;
>
> ....
>
> (3) the causing of any injury within this state whether tortious or by breach of warranty. Utah Code Ann. § 78–27–24 (Supp.1994).

In this case, HEI contends that Uniflo can be reached by the Utah long-arm statute because it has both transacted business within the state and caused a tortious injury within the state.

■ HEI's "tortious injury" argument is based on Uniflo's September 1, 1994 letter to Mr. Rego. That letter was sent by Uniflo's Kansas office to Mr. Rego's Tennessee office, and related to Uniflo being paid for its work at the California Post Office site. Copies of the letter were sent by Uniflo to another USPS employee in Virginia, and to Uniflo's bonding company in Illinois. The letter was never published by Uniflo in Utah. Because the letter does not implicate Utah in any way, HEI can at best argue that while Uniflo tortiously interfered with and defamed HEI in Tennessee, Virginia, and Illinois, Uniflo "caused" a financial injury to HEI's business in Utah. Yet this argument has been flatly rejected by the Utah courts as a basis for exercising specific personal jurisdiction. *See, e.g., Brown*, 1993 WL 643364, at *7 ("[J]urisdiction [cannot] be predicated solely upon financial injury occurring to a Utah resident.") (citing *Hydroswift Corp. v. Louie's Boats & Motors, Inc.*, 494 P.2d 532, 532 (Utah 1972)); *Cannondale*, 750 F.Supp. at 1075 ("[L]oss of profits within a state in which a place of business is maintained simply is an insufficient basis on which to find that the injury occurred within that state...."). Indeed, acceptance of such an argument "would lead to the unacceptable proposition that jurisdiction could be established anywhere a plaintiff might locate." *Burt Drilling, Inc. v. Portadrill*, 608 P.2d 244, 250 (Utah 1980) (citations omitted). Accordingly, the court holds that Uniflo cannot be subject to suit in Utah under the "tortious injury" provision of the Utah long-arm statute in as much as any injury in this case flowing from Uniflo's letter to Mr. Rego occurred, if at all, in Tennessee, Virginia, and Illinois—not in Utah.[6]

■ HEI's "transacting business" argument is based on Uniflo's Utah contacts as they relate to Uniflo's subcontract to construct and install the mail tray conveyor system for the California Post Office. Specifically, HEI argues that, while the subcontract was executed in Kansas and required Uniflo to perform in Kansas and California, Uniflo "transacted business" in Utah by having the following Utah contacts with regard to the Post Office project: (1) in May of 1992,

---

**6.** Moreover, even if the court could find that Uniflo's letter caused a tortious injury in Utah under the Utah long-arm statute, such a finding would likely violate federal due process. *See Hydroswift*, 494 P.2d at 532 (holding that a due process violation would result if a Utah court took jurisdiction over a defendant that merely caused a financial injury to a Utah resident by committing a conversion or slander in another state); *Far West Capital*, 46 F.3d at 1079 ("[T]he mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts.").

a Uniflo employee came to HEI's West Valley City, Utah office and solicited business from HEI; (2) in September of 1992, after HEI awarded Uniflo the subcontract, Uniflo's national sales manager came to HEI's West Valley City, Utah office and spent four days installing Uniflo's software on HEI's computers; (3) sometime thereafter, a Uniflo engineer came to HEI's West Valley City, Utah office to review certain aspects of the Post Office project; and (4) during the course of the project, numerous letters and phone calls were exchanged, all though HEI's West Valley City, Utah office.

Utah Code Ann. § 78–27–23 defines "transaction of business within this state" as "activities of a non-resident person, his agents, or representatives in this state *which affect* persons or businesses within the state of Utah." Utah Code Ann. § 78–27–23 (1992) (emphasis added). This court previously has held that given this definition, a person may transact business within the state even if they are not physically present in Utah. *See Brown v. Washoe Hous. Auth.,* 625 F.Supp. 595, 599 (D.Utah 1985), *rev'd on other grounds,* 835 F.2d 1327 (10th Cir.1988). Moreover, this court also has held that the making of a single phone call to a Utah resident can constitute the "transaction of business" within the state in as much as the call "affects persons and businesses within the State of Utah." *Nova Mud Corp. v. Fletcher,* 648 F.Supp. 1123, 1126 (D.Utah 1986). Given these broad interpretations, this court finds that Uniflo "transacted business" within the State of Utah by soliciting HEI's business and by sending employees and correspondence to HEI's West Valley City, Utah office. Uniflo is thus subject to jurisdiction under the "transacting business" section of the Utah long-arm statute.

*(2). Due Process Considerations.*

■ The next issue the court must address is whether the exercise of jurisdiction over Uniflo would comport with the requirements of federal due process. A two-part test exists to guide the court in this determination. First, the court must find that certain " 'minimum contacts' " exist between the State of Utah and Uniflo. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)); *Far West Capital,* 46 F.3d at 1074 (citations omitted). Second, if the court finds that minimum contacts exist, exercising jurisdiction over Uniflo must "not offend 'traditional notions of fair play and substantial justice.' " *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)); *DeMoss,* 762 F.Supp. at 917; *Radcliffe v. Akhavan,* 875 P.2d 608, 612 (Utah Ct.App.1994).

*a. Minimum Contacts.*

■ The first prong of the due process test looks at whether the defendant has sufficient "minimum contacts" with the forum state. The United States Supreme Court has stated that minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and privileges of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). "When a corporation engages in such purposeful availment in the forum state 'it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to consumers, or, if the risks are too great, severing its connection with the state.' " *DeMoss,* 762 F.Supp. at 917 (quoting *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567).

In this case, HEI's three contract-based claims all relate to Uniflo's alleged breach of its subcontract to install the mail tray conveyor system at the California Post Office.[7] Given this fact, Uniflo argues that because the subcontract was not negotiated, created,

---

7. Because the court has already held that Uniflo is not subject to suit under the Utah long-arm statute for injuries flowing from Uniflo's letter to Mr. Rego, the court need not address whether asserting jurisdiction based on that letter would comport with either due process or the Utah nexus requirement.

performed, or breached in Utah, Uniflo cannot have the necessary "minimum contacts" with Utah required to give this court jurisdiction. The court must reject Uniflo's argument. First, while it is true that the mere fact that HEI has an office in Utah is not enough to satisfy the minimum contacts requirement, *Reynolds v. International Amateur Athletic Federation,* 23 F.3d 1110, 1118–19 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994), the facts in this case show that in May of 1992 Uniflo's national sales manager came to HEI's West Valley City, Utah office and made a general sales presentation. It was out of that presentation that Uniflo's subcontract for the California Post Office project arose. Accordingly, "[a]lthough the fact that a defendant initiates a business transaction is not dispositive, it tends to confirm the purposeful direction of the defendant's activities toward the forum state." *Rocky Mountain Claim Staking v. Frandsen,* 884 P.2d 1299, 1302 (Utah Ct.App.1994) (citations omitted); *see also Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182 (emphasizing that parties who reach into another state to create continuing contractual relationships are subject to suit in that state).

Second, the facts in this case also show that over the course of the California Post Office project, HEI and Uniflo engaged in numerous telephonic and mail communications, all through HEI's West Valley City, Utah office. Undoubtedly, "phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Far West Capital,* 46 F.3d at 1077 (citing *Continental Am. Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1314 (10th Cir.1982)). Nonetheless, given the number and nature of the phone calls and letters that occurred here,[8] the court finds that those contacts also are "some evidence suggesting purposeful availment" on behalf of Uniflo. *Id.* at 1076 (citing *Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182).

Finally, the facts of this case also show that in September of 1992, after HEI awarded Uniflo the subcontract, Uniflo's national sales manager came to HEI's West Valley City, Utah office and spent four days installing Uniflo's software on HEI's computers. Sometime thereafter, a Uniflo engineer came to HEI's West Valley City, Utah office to review certain aspects of the Post Office project. In *Burger King,* the Supreme Court applied the "minimum contacts" standard to a contract case. In so doing, the Court emphasized that "[i]t is . . . prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing— that must be evaluated in determining whether the defendant has purposefully established minimum contacts within the forum." *Burger King,* 471 U.S. at 478–79, 105 S.Ct. at 2185 (citing *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 159). Given *Burger King,* the court is of the opinion that by coming to Utah to work on the California Post Office project, Uniflo could have "reasonably anticipated being haled into court" in Utah in a suit involving that project. Accordingly, these contacts also are "some evidence suggesting purposeful availment" on behalf of Uniflo. *Far West Capital,* 46 F.3d at 1076.

### b. Fairness Considerations.

The second prong of the due process test essentially asks whether asserting jurisdiction over a non-resident defendant would be fair. The Supreme Court has noted that "considerations of [fair play and substantial justice] sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184. "Relevant factors in determining the reasonableness or fairness of asserting jurisdiction include: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive

---

**8.** HEI claims that "hundreds" of phone calls and letters were exchanged. While Uniflo does not necessarily agree with that figure, it does admit that the number was "numerous."

social policies." *DeMoss,* 762 F.Supp. at 919–20 (citations omitted).

■ In this case, HEI has an office in West Valley City, Utah and some of the witnesses and evidence relating to the California Post Office project are also located in Utah. HEI thus has an interest in litigating this case in Utah. Moreover, after the subcontract was entered into, several Uniflo employees came to Utah to work on the California Post Office project. The burden placed on Uniflo by having to litigate in Utah would thus seem slight.[9] Finally, the State of Utah has an interest in adjudicating this dispute because, if Uniflo did in fact breach its subcontract to build the mail tray conveyor system, the brunt of that breach was at least partially felt by HEI's West Valley City, Utah office.[10] *See Romney v. St. John Virgin Grand Villas Assoc.,* 734 F.Supp. 957, 962 (D.Utah 1990) ("[W]here the defendant knows that the brunt of the injury will be felt by a particular resident in the forum, the defendant must reasonably anticipate being haled into court there to answer for its actions.") (citing *Calder v. Jones,* 465 U.S. 783, 790–91, 104 S.Ct. 1482, 1487–88, 79 L.Ed.2d 804 (1984)). Accordingly, for the foregoing reasons, the court finds that asserting jurisdiction over Uniflo in this case would not offend "traditional notions of fair play and substantial justice." [11]

### *(3). The "Nexus" Requirement.*

■ The final issue the court must address, and in the court's opinion the most difficult to decide, is whether a close enough "nexus" exists between HEI's contract claims and Uniflo's contacts with the State of Utah. The difficulty for the court arises from two inconsistent provisions contained in the Utah Code itself. For example, the Utah legislature has declared that the Utah long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann. § 78–27–22 (1992). The United States Supreme Court has held that due process is "satisfied if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that *'arise out of or relate to'* these activities." *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182 (emphasis added). The word "relate" means "to bring into or establish association, connection, or relation," and the word "related" means something that is "associated" or "connected." *See* The Random House Dictionary of the English Language 1626 (2d ed. unabridged 1987). These are very broad definitions. Thus, the use of the phrase "relate to" by the Supreme Court in *Burger King* suggests that the "nexus" requirement under Utah law should be construed quite broadly.

Conversely, the Utah long-arm statute itself grants jurisdiction to the courts of this state only if a non-resident defendant has engaged in some conduct within the state and the plaintiff's claims against the defendant specifically *"arise from"* that conduct. *See* Utah Code Ann. § 78–27–24 (Supp. 1994).[12] The phrase "arise from" means "to come into being, action or notice; originate; appear; spring up." *See* The Random House Dictionary of the English Language 113 (2d ed. unabridged 1987). These are very nar-

---

9. The court notes that while Uniflo has expressed its discomfort at litigating this case in Utah, Uniflo has not made a motion to either dismiss the case on venue grounds or transfer the case to a more convenient forum.

10. Indeed, HEI claims that its West Valley City, Utah office spent some $830,000 to complete Uniflo's work on the mail tray conveyor system *after the alleged breach.*

11. The court has not addressed the fourth and fifth *DeMoss* factors in its analysis because those factors neither favor nor disfavor the exercise of jurisdiction over Uniflo.

12. As noted above, section 78–27–24 provides:

> Any person ... whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual his personal representative, to the jurisdiction of the courts of this state *as to any claim arising from:*
> (1) the transaction of any business within this state.

(emphasis added).

row definitions. Thus, the use of the phrase "arising from" in the Utah long-arm statute suggests that the "nexus" requirement under Utah law should be construed quite narrowly.

The Supreme Court has not addressed whether there is a distinction between suits which "arise from" and those which "relate to" the defendant's contacts with the forum state. *See Doe*, 974 F.2d at 146 (citing *Helicopteros*, 466 U.S. at 415 n. 10, 104 S.Ct. at 1872 n. 10). Moreover, this court has found no Utah case which has either recognized the aforementioned inconsistencies or defined what interpretation should be applied to the Utah "nexus" requirement. Accordingly, it is up to this court to resolve the issue.[13]

In the court's opinion, the "nexus" requirement should be construed narrowly to require that the plaintiff's claims must "arise from"—not merely "relate to"—the defendant's contacts with Utah. First, the phrase "arising from" in the Utah long-arm statute is clear and unambiguous. It means that something "originates" or "springs" from something else. In the court's mind, this language is quite narrow and therefore mandates that the court abstain from taking jurisdiction in those cases where the plaintiff's claims and the defendant's contacts are only tenuously "related." *See Kansas Gas & Elec. Co. v. Brock*, 780 F.2d 1505, 1510 (10th Cir.1985), *cert. denied*, 478 U.S. 1011, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986) ("It is a basic tenet of statutory construction that if statutory language is clear and unambiguous on its face then it must be given its plain meaning and no resort to the underlying legislative history is appropriate."); *State v. Montoya*, 887 P.2d 857, 860 (Utah 1994) ("[W]here language is clear and unambiguous, we will construe that language according to its plain meaning.") (citing *Horton v. Royal Order of the Sun*, 821 P.2d 1167, 1168 (Utah 1991)).

Second, the Utah Supreme Court appears to interpret the Utah long-arm statute as requiring that the plaintiff's claims "arise from," not merely "relate to," the defendant's contacts with the State of Utah. For example, in *Arguello v. Industrial Woodworking Machine Co.*, 838 P.2d 1120 (Utah 1992), the plaintiff brought negligence and products liability claims against the defendant based upon the alleged malfunctioning of a finger jointing machine which the defendant had manufactured. *Id.* at 1123. Before the lawsuit, one of the defendant's representatives had come to Utah to give advice to the plaintiff's co-workers about the workings of the machine. In holding that the Utah courts nevertheless lacked jurisdiction over the defendant, the court wrote:

> Arguello's claims do not arise out of Industrial's contacts in Utah. Arguello's negligence and products liability claims are based upon the alleged malfunctioning of the finger jointing machine. Industrial's contacts with Utah, on the other hand, are unrelated to the cause of the injury.... [T]he claim cannot be said to arise from [the representative's visit] because [he] did not undertake to make any changes or repairs to the machine related to the problem that allegedly caused Arguello's injury.... This situation is analogous to that in *Roskelley [& Co. v. Lerco, Inc.*, 610 P.2d 1307 (Utah 1980) ], where jurisdiction was not found despite the defendant's visit and the sale of products in Utah. Here, as in *Roskelley*, the contacts of the out-of-state defendant are unrelated to plaintiff's claims, *and the claim cannot be said to "arise out of" the contacts with the state.*

*Id.* (emphasis added); *see also Far West Capital*, 46 F.3d at 1077–81 (holding that Utah's nexus requirement had not been met because the defendants' allegedly tortious conduct did not "arise from" their Utah conduct). Accordingly, for both of the above reasons, the court has decided to interpret Utah's "nexus" requirement as granting jurisdiction to the courts of this state only where a non-resident defendant has engaged

---

**13.** Given the current state of the law, the potential exists for blatantly outcome-determinative judicial opinions. For example, in any case where a court wants to find that it has personal jurisdiction, it merely needs to seize on the "relate to" language of *Burger King* and the "nexus" requirement will likely be met. Conversely, in any case where a court wants to find that it lacks personal jurisdiction, it merely needs to seize on the "arising from" language of the Utah long-arm statute and the "nexus" requirement will likely fail.

in some conduct within the state and the plaintiff's claims against the defendant specifically "arise from" that conduct.[14]

 Applying that interpretation to the case at hand, the court finds that there is not a close enough "nexus" between HEI's contract claims and Uniflo's contacts with the State of Utah to give this court jurisdiction over Uniflo. For example, HEI's contract claims are all breach of contract claims based on Uniflo's subcontract to construct and install the mail tray conveyor system for the California Post Office. While Uniflo sent employees to Utah to work on that subcontract, nothing in HEI's complaint alludes to those contacts as having anything to do with Uniflo's alleged breach of the subcontract. Indeed, each and every one of HEI's claims is premised on activities which it alleges either occurred or should have occurred *in California.* *See* Complaint ¶ 27 ("Uniflo breached the Subcontract by failing to complete its work *at the Facility* [15] in a timely manner."); *Id.* ¶ 32 ("Uniflo breached its Subcontract by failing to perform its work *at the Facility* in accordance with the applicable statement of work and specifications."); *Id.* ¶ 35 ("Uniflo breached the Subcontract by *failing to return to the Facility site* in a timely manner after the Northridge Earthquake, and by failing to cure after receipt of HEI's notice to cure."). Accordingly, while HEI's contract claims might "relate to" Uniflo's contacts with Utah, they certainly do not "arise from" those contacts as required by Utah law. The "nexus" requirement has thus not been met.

### V. ORDER

This court lacks personal jurisdiction over Uniflo. Accordingly, based on the foregoing and good cause appearing, IT IS HEREBY ORDERED AS FOLLOWS:

1. Uniflo's motion to dismiss HEI's complaint for lack of personal jurisdiction is granted.

2. HEI's complaint is dismissed without prejudice.

3. Uniflo is awarded its costs.

4. This order shall serve as the order of the court and no further order need be prepared by counsel.

---

**14.** Indeed, if the Utah legislature really wants the Utah jurisdictional statutes to apply to the "fullest extent permitted by the due process clause," Utah Code Ann. § 78–27–22 (1992), it should amend the Utah long-arm statute to incorporate *Burger King's* "arising out of or relating to" language.

**15.** HEI's complaint defines the "Facility" as the Van Nuys General Mail Facility/Vehicle Maintenance Facility in Van Nuys, California. *See* Complaint ¶ 7.